UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL A. DEMUTH,

                                        Plaintiff,

v.                                                          9:18-CV-807
                                                              (DNH/ATB)

CORRECTIONS OFFICER COWLEY,

                                        Defendant.

---

MICHAEL A. DEMUTH, Plaintiff, pro se
FRANK W. MILLER, ESQ. for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendant Cowley, a Corrections Officer at Chenango County Correctional Facility ("CCCF") violated plaintiff's Fourth Amendment right to be free from an unreasonable strip search. (Amended Complaint ("AC")) (Dkt. No. 28). Plaintiff seeks substantial monetary relief.

Presently before the court is the defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 35). Plaintiff has filed a response in opposition to the motion, and defendant has filed a reply. (Dkt. Nos. 40, 41). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

**I.    Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material

fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II.   Facts

Plaintiff alleges that on July 3, 2018,[1] he was incarcerated at CCCF as a pretrial

---

[1] The AC states that this incident took place on July 3, 2018, but there are documents indicating that the incident may have taken place on July 4, 2018. (*Compare* AC at 2 (July 3) *with* Cowley Aff.

detainee, living in C-Pod which housed approximately 32 inmates. (AC at 2). Plaintiff states that he was having breakfast at approximately 7:00 am. Defendant Cowley was monitoring the morning meal service, when "someone" took an extra piece of fruit from the meal cart.[2] (*Id.*) Plaintiff claims that defendant Cowley accused plaintiff of the "wrongdoing." (AC at 2). Plaintiff claims that defendant Cowley first told plaintiff to stand up and show the officer that he did not have the fruit. (*Id.*) Officer Cowley then proceeded to conduct the morning meal service.

After all the trays were distributed, defendant Cowley returned to where plaintiff was sitting and "proceeded to harass" plaintiff, "tormenting" him about the missing fruit. (*Id.*) Plaintiff alleges that defendant Cowley made "plaintiff take off his orange sweat shirt, orange top shirt, and then lift his tee shirt . . . so he could be certain that this plaintiff was in fact not in possession of the fruit taken from the meal cart." (AC at 3). Plaintiff claims that this was done in front of other inmates and in plain view of the security cameras. Plaintiff refers to this as a "humiliating" and "unprofessional" "illegal strip search." (*Id.*)

Defendant Cowley's version of the events is slightly different. (Cowley Aff.) (Dkt. No. 35-6). Defendant Cowley states that duing the morning breakfast meal service, he observed plaintiff being served breakfast by one of the inmate work crew. (Cowley Aff. ¶ 8). Inmates are entitled to only one piece of fruit and may not share,

---

¶ 3 (July 4, 2018), Pl.'s Dep. at 7 (July 3, 2018) (Miller Aff. Ex. A), and Def.'s Mem. of Law at 1 (July 4, 2018). This discrepancy does not affect this court's recommendation. The court will use July 3, 2018 - the date in the AC and in the plaintiff's deposition.

[2] At his deposition, plaintiff testified that he knew who took the extra fruit, but did not want to say anything about it. (Pl.'s Dep. at 11).

exchange, or give away any unwanted food. (*Id.*) Defendant Cowley states that he looked away to observe another inmate delivering food to another table, and when he looked back, defendant Cowley noticed that plaintiff had been given a second banana. (Cowley Aff. ¶ 9). Defendant Cowley noticed that several inmates had refused to eat the fruit that they were provided. When defendant Cowley "looked back a third time," he noticed that plaintiff "was behaving in a suspicious manner and that he had his hands underneath his sweatshirt." (*Id.*) Defendant Cowley states that "[i]t appeared to me that the Plaintiff was either concealing the extra fruit or messing around." (Cowley Aff. ¶ 10).

Defendant Cowley states that, although gambling is prohibited at CCCF, inmates sometimes gamble with food or other items, such as those purchased in the commissary. (Cowley Aff. ¶ 11). Defendant Cowley became suspicious as he watched plaintiff because plaintiff kept adjusting his sweatshirt and kept placing his hands underneath his sweatshirt. (Cowley Aff. ¶ 12). As a result, defendant Cowley approached plaintiff to ask him if he had the extra fruit, and plaintiff denied having it. (*Id.*) Defendant Cowley states that he then went about his duties while still observing the plaintiff, who kept adjusting his sweatshirt and placing his hands underneath it. (Cowley Aff. ¶ 13).

When defendant Cowley approached plaintiff a second time and questioned him about the missing fruit, plaintiff "became furious, stood up and in a raised voice indicated that I was harassing him. Without me saying another word, Plaintiff took off his orange sweatshirt and then he took off the orange shirt underneath the sweatshirt. Plaintiff did not remove or lift up his white tee shirt." (Cowley Aff. ¶ 14). Defendant

Cowley states that he observed that the plaintiff did not have the additional piece of fruit on him or under his sweatshirt. Thus, he "left the Plaintiff at his table and continued my morning duties." (*Id.*) Defendant Cowley states that he did not reprimand plaintiff or ask that he disrobe. (Cowley Aff. ¶ 15). Rather, plaintiff took this action voluntarily as part of his "overly exaggerated response" to the defendant's inquiry into the missing piece of fruit. (*Id.*)

During plaintiff's deposition, he acknowledged that food was "regulated," at CCCF, and that inmates could not pass or exchange food, cups, or even silverware during a meal. (Pl.'s Dep. at 8). Plaintiff also testified that he was aware that food was used to "gamble." (*Id.*) Plaintiff testified that, on the day in question, he was wearing a white tee shirt, with an orange shirt over it, and an orange sweatshirt over that. (Pl.'s Dep. at 9, 10). Plaintiff for the first time stated that defendant Cowley made plaintiff show him his hands. (*Id.*) Plaintiff stated that after he showed defendant Cowley his hands, he told plaintiff to "lift [his] shirt and to then take it off." (Pl.'s Dep. at 10). Plaintiff also testified that he was left in his white tee shirt and his pants.[3] (Pl.'s Dep. at 13). During his deposition plaintiff agreed that, when defendant Cowley did not find the fruit, "that was it," plaintiff put his shirt back on, sat back down, and defendant Cowley "went about his business." (*Id.*)

---

[3] At the deposition, plaintiff never stated that he lifted or took off his white tee shirt.
    Q.    So you took off your sweatshirt?
    A.    Yes, and my orange shirt.
    Q.    So, that left you in your white T-shirt?
    A.    Yes, and my pants.
(Pl.'s Dep. at 13).

5

### III. Fourth Amendment

#### A. Legal Standards

The Fourth Amendment protection against unreasonable searches applies to pretrial detainees and to convicted to prisoners. *Sankara v. Plaskett*, No. 15-CV-8470, 2017 WL 4444250, at *3 (S.D.N.Y. Oct. 4, 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 545, 559 (1979)). Inmates also retain a limited right to bodily privacy under the Fourth Amendment. *Id.* (citing *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016)). In order to determine the reasonableness of a strip search, courts consider "'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Id.* (quoting *Bell*, 441 U.S. at 559).

If a legitimate penological goal is the "motivation" for the strip search, it has been found to be reasonable, despite its "invasive and highly personal nature." *Id.* (citing *Bell*, 441 U.S. at 558; *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992). Whether the officer is searching for contraband is "'highly relevant to the reasonableness inquiry.'" *Id.* (quoting *Harris*, 818 F.3d at 62). However, even when a search is motivated by a legitimate penological interest, it may become unreasonable if the search is conducted in an abusive manner or in the presence of unnecessary spectators. *Id.* (citing *Bell*, 441 U.S. at 560; *Harris*, 818 F.3d at 60, 62). The "'scope of a search bears directly on its reasonableness.'" *Wheeler v. Artola*, No. 16-CV-7440, 2019 WL 4593651, at *14 (S.D.N.Y. Sept. 23, 2019) (quoting *Fate v. Charles*, 24 F. Supp. 3d 337, 350 (S.D.N.Y. 2014).

## B.     Application

The common definition of a "strip search" is to search a person "requiring removal of the clothes." *Mariott v. County of Montgomery*, 227 F.R.D. 159, 169 (N.D.N.Y. 2005) (quoting Webster's New World Dictionary 1328 (Victoria Neufeldt & David B. Guralnik, eds., 3d College ed. 1988)). In *Mariott*, the court further stated that as a "legal term," strip search means the search of a person "'after that person's clothes have been removed,'" the purpose of which is usually to find any contraband that the individual may be hiding. *Id.* (quoting Black's Law Dictionary 1378–79 (8th ed.2004)). This type of search is also "'[a]n examination of a person's body, property, or other area that the person would reasonably be expected to consider as private.'" *Id.* (quoting Black's Law Dictionary at 1377).

Although plaintiff and defendant's version of this incident differ slightly, these disputed facts in no way prevent the court from deciding in the defendant's favor, even if the court assumes that plaintiff was told to take off his sweatshirt and his orange shirt. As plaintiff conceded at the deposition, he was still wearing a white T-Shirt and pants during the entire incident.[4] Plaintiff also concedes that after defendant Cowley realized that plaintiff did not have the banana, he simply walked away and went about his business. (Pl.'s Dep. at 10). Thus, this encounter does not even rise to the level of a *strip* search as defined above. There was no examination of any part of plaintiff's body

---

[4] Defendant Cowley alleges in his affidavit, supported by the affidavit of Corrections Officer Linton Wainright, plaintiff took it upon himself to remove his sweatshirt in an exaggerated response to Officer Cowley's question about the fruit. (Wainright Aff. ¶¶ 13-16, Cowley Aff. ¶ 14). Officer Wainright states that he was 15-20 feet away and had a "clear line of sight to observe the interaction between Officer Cowley and Plaintiff." (Wainright Aff. ¶ 13). Both officers state that plaintiff did not pull up the white undershirt that he was wearing. (Wainright Aff. ¶ 14, Cowley Aff. ¶ 14).

7

that plaintiff would "reasonably be expected to consider as private.

Defendant Cowley states in his affidavit that plaintiff was acting unusually by placing his hands under his sweatshirt, providing the reason for defendant Cowley's suspicion. Officer Wainright also states in his affidavit that plaintiff was behaving in a suspicious manner, which was "out of character for [plaintiff] such as avoiding contact with everyone, moving around in his seat and keeping his hands under his sweatshirt." (Wainright Aff. ¶ 11-12). Plaintiff conceded at his deposition that he knew that inmates were not allowed to have extra food or to exchange food that they were given, and that defendant Cowley had "reason to do something." (Pl.'s Dep. at 8).

Even under plaintiff's description of the event at his deposition, the "scope of the intrusion" was minimal, there was justification for what occurred even if plaintiff did not ultimately have the fruit,[5] and because the intrusion was so minimal,[6] the location of the alleged incident[7] would not change this court's decision under the circumstances. Any disputed facts are not material. *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is

---

[5] As stated above, plaintiff also conceded at his deposition that a piece of fruit was missing, and that defendant Cowley had a reasonable suspicion that something was going on. In fact, plaintiff testified that he knew who took the fruit, but chose not to tell the officer for whatever reason.

[6] Defendant Cowley estimates that "the discussion between Plaintiff and I lasted approximately one minute. (Cowley Aff. ¶ 17).

[7] Plaintiff alleges that the incident took place in the cafeteria with 32 inmates at breakfast and in front of various security cameras.

8

contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

This court makes absolutely no finding that defendant Cowley engaged in any of the conduct described by plaintiff that differed from defendant Cowley's affidavit. The court only assumes these facts for purposes of the motion for summary judgment. Thus, under any view of the facts as stated in this action, defendant did not unreasonably "strip search" the plaintiff, nor did he engage in any other "unreasonable" search..

## IV.  Verbal Harassment

### A.  Legal Standards

It is well-settled that verbal harassment, no matter how inexcusable it may be, does not rise to the level of a constitutional violation. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).

### B.  Application

To the extent that plaintiff alleges that defendant Cowley verbally "tormented" him about the fruit or engaged in verbal harassment of any kind, plaintiff's claim must be dismissed. The court does not find that any "harassment" took place, but even assuming that what defendant Cowley said to plaintiff could have been somehow interpreted as "harassment," it would not rise to the level of a constitutional violation and must be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendant's motion for summary judgment (Dkt. No. 35) be **GRANTED**, and that the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: October 3, 2019

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge